UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

THOMAS SENTEMENTES,                  :
     Plaintiff,                          :
                                         :
     v.                                  :    Case No. 3:20cv1826 (MPS)
                                         :
GOVERNOR NED LAMONT, STATE OF        :
CONNECTICUT, ET AL.                  :
     Defendants.                         :

## <u>INITIAL REVIEW ORDER</u>

The plaintiff, Thomas J. Sentementes, is currently confined at Osborn Correctional Institution in Somers, Connecticut ("Osborn").  He files this civil rights action pursuant to 42 U.S.C. § 1983 against Governor Ned Lamont, Pasqualina Bastone, Bethel Police Chief Jeffrey Finch, Bethel Police Officer Emerson, Bank of America CEO Brian Moyihan, Daniel Sentementes, and Public Defender Thomas Leaf.  For the reasons set forth below, the Court will dismiss the complaint in part.

I.      **Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  *Id.*  In undertaking this review, the Court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest arguments that they suggest."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of

Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

## II.    Factual Allegations

On January 28, 2019, Bethel Police Officer Emerson called the plaintiff and requested that he come to the station to discuss a telephone call that his son had made to the Bethel Police Department as well as a statement made by Pasqualina Bastone.  Compl., ECF No. 1, at 3 ¶ 3. Officer Emerson inquired as to whether the plaintiff had called his son and threatened him.  *Id.* ¶ 4.  The plaintiff informed Emerson that he was in a vehicle with his friend Sid Weston when he spoke to his son via speaker phone.  *Id.*

That evening, the plaintiff traveled with Sid Weston to the Bethel Police station.  *Id.* ¶ 5. Upon their arrival at the station, Weston gave a statement regarding the telephone conversation that he overheard between the plaintiff and his son.  *Id.*  Weston indicated that during the conversation, the plaintiff's son had threatened the plaintiff and "violated [the plaintiff] on the restraining order."  *Id.*  As of January 25, 2019, Pasqualina Bastone had secured a restraining order against the plaintiff and had made a statement to a Bethel Police officer.  *Id.* at 4 ¶¶ 9-10.

In speaking with the plaintiff at the station, Officer Emerson expressed his dislike of the

plaintiff and stated that he did not care that Weston had been a witness to the telephone conversation between the plaintiff and his son because he wanted the plaintiff to go to prison. *Id.* at 3 ¶ 5. Officer Emerson then arrested the plaintiff for threatening his son and violating a protective order previously granted to Pasqualina Bastone and held him at the station on a $50,000.00 bond. *Id.* at 2-4 ¶¶ 3, 7. Officer Emerson's dislike of the plaintiff was demonstrated when he falsely testified in another of the plaintiff's criminal cases. *Id.* at 3 ¶ 6. In that case, the jury reached a not guilty verdict. *Id.*

A Connecticut Superior Court judge assigned Public Defender Thomas Leaf to represent the plaintiff in the criminal case arising from the plaintiff's arrest on January 28, 2019. *Id.* ¶ 7. Public Defender Leaf informed the plaintiff that the threats that he had allegedly made to his son on the phone did not constitute criminal activity. *Id.* Leaf filed only one pretrial motion in defending the plaintiff even though the plaintiff had evidence in the form of a sworn affidavit of a witness who could challenge the basis of the criminal charges filed against the plaintiff. *Id.* at 4 ¶ 12. When the plaintiff questioned the quality of Leaf's representation, Leaf swore at the plaintiff. *Id.* at 7 ¶ 32. The plaintiff immediately fired Leaf and represented himself. *Id.* at 5 ¶ 23; at 7 ¶ 32. After the plaintiff spent a year of confinement in a correctional facility, the State of Connecticut dismissed/*nolled* the criminal charges for which he had been arrested on January 28, 2019 and released the plaintiff from prison. *Id.* at 2-5 ¶¶ 7, 11, 19.

The plaintiff was unable to post bond during his one-year period of confinement because his brother, Daniel Sentementes, withheld the plaintiff's inheritance from their mother. *Id.* at 4 ¶ 14. Bank of America CEO Moyihan did not respond to the plaintiff's letters seeking release of funds that he could have used to post bond. *Id.* ¶ 13.

3

III.   **Discussion**

The plaintiff claims that the defendants deprived him of life and liberty, maliciously prosecuted, wrongfully incarcerated, and made false statements about him, subjected him to harassment and cruel and unusual punishment, and engaged in the intentional infliction of emotional distress and breaches of fiduciary duties.  *Id.* at 2.  For relief, he seeks at total of $32,000,000.00.  *Id.* at 11.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."  To state a claim under section 1983, a plaintiff must allege facts showing that the defendant, a person acting under color of state, law deprived him of a federally or constitutionally protected right. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982).

A.   **Governor Lamont**

The first defendant listed in the caption of the complaint is "STATE OF CONNECTICUT ET AL NED LAMONT, GOVE[R]NOR."  Compl. at 1.  To the extent that the plaintiff intended to name the State of Connecticut as a separate defendant, a State is not a person for purposes a section 1983 action.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983). Accordingly, all federal claims asserted against the State of Connecticut are dismissed.  *See* 28 U.S.C. § 1915A(b).

The complaint is devoid of allegations regarding the conduct of Governor Lamont.  As

4

such, the plaintiff has not alleged that Lamont violated his federally or constitutionally protected rights.  All federal claims asserted against Governor Lamont are dismissed as lacking an arguable legal and factual basis.  *See* 28 U.S.C. § 1915A(b).

**B.    Pasqualina Bastone, Daniel Sentementes, CEO Moyihan**

On or before the date of the plaintiff's arrest in January 2019, Bastone allegedly made statements to the police regarding threats made by the plaintiff and sought and was granted a restraining/protective order against the plaintiff.  On the date of the plaintiff's arrest and during his year-long confinement in a correctional institution, the plaintiff's brother, Daniel Sentementes, was the executor of their mother's will and Moyihan was the CEO of Bank of America.  None of these defendants appears to be a state actor.

A plaintiff may demonstrate that the conduct of a "nominally private entity" constitutes state action under section 1983 in three ways: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state (the compulsion test); (2) the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies (the joint action test or close nexus test); or (3) when the entity 'has been delegated a public function by the [s]tate,' (the public function test)."  *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).  "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state."  *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citations omitted).

The plaintiff's allegations raise no inference that any of the private citizen defendants

5

engaged in conduct that could be fairly attributed to the state.  Nor are there allegations that the private citizen defendants conspired with a state actor or state actors.  *See Tower v. Glover,* 467 U.S. 914, 920 (1984) ("[A]n otherwise private person acts 'under color of' state law" only if he or she "conspir[es] with state officials to deprive another of federal rights.") (quoting *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980)); *see also Ciambriello v. County of Nassau,* 292 F.3d 307, 325 (2d Cir. 2002). ("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" are insufficient.).  A conspiracy claim under § 1983 requires the plaintiff to show "(1) an agreement between two or more state actors or between a state actor and a private entity, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal, causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  The plaintiff has failed to assert facts to meet any of the elements of a claim that one or more of the private individuals, Bastone, Daniel Sentementes, or Moyihan, conspired with a state actor.

Moreover, the fact that Bastone may have spoken to or provided a written statement to the Bethel Police officer and sought a restraining or protective order against the plaintiff does not transform her into a state actor under 42 U.S.C. § 1983.  *See Alvarez v. Peters*, No. 19-CV-6789 (EK), 2020 WL 1808901, at *4 (E.D.N.Y. Apr. 9, 2020) (Store employee's filing of "a complaint with law enforcement that resulted in Plaintiff's arrest or prosecution is insufficient to establish state action.") (citing *Adebiyi v. City of New York*, No. 13-cv-480(WFK), 2014 WL 4922888, at *4 (E.D.N.Y. Sept. 30, 2014) (noting "provision of information to a police officer — even if that information is false or results in the officer taking affirmative action — is insufficient to constitute 'joint action' with state actors for purposes of § 1983.") (quotation marks and citations

omitted); *Bravo v. Bexar Cty, Tex.,* No. 12–CV–4009, 2014 WL 1155302, at *6 (E.D.N.Y. Mar.

21, 2014) (explaining that allegations that private party filed a complaint with police does not

show conspiracy or joint action with state actors); *Vazquez v. Combs*, 04–cv–4189, 2004 WL

2404224, at *4 (S.D.N.Y. Oct. 22, 2004) ("[M]erely filing a complaint with the police, reporting

a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the

complaint or report is deliberately false, does not give rise to a claim against the complainant for

a civil rights violation.").

Accordingly, the section 1983 claims asserted against Bastone, Bank of America CEO

Moyihan, and Daniel Sentementes are dismissed for failure to state a plausible claim upon which

relief may be granted.  *See* 28 U.S.C. § 1915A(b).

### C.     Public Defender Leaf

A public defender does not act under color of state law when performing a lawyer's

traditional functions as counsel to a defendant in a criminal proceeding.  *Polk Cty. v. Dodson*,

454 U.S. 312, 318-19 & n.9, 325 (1981).  Both a public defender and private attorney may be

held liable under section 1983 if they conspired with state actors.  *See Tower v. Glover*, 467 U.S.

914, 920 (1984) (holding that a public defender acts under color of state law when conspiring

with state actors).  There are no allegations that Public Defender Leaf conspired with any state

actor to deprive Sentementes of his rights or engaged in any conduct fairly attributable to the

state.  Thus, the section 1983 claims against Leaf are dismissed as not plausible under 28 U.S.C.

§ 1915A.

### D.     Chief Finch and Officer Emerson – Fourth and Fourteenth Amendments

The plaintiff alleges that Officer Emerson arrested, wrongfully incarcerated him and

deprived him of liberty based on false statements made by his son and Bastone and also was responsible for his malicious prosecution until the State of Connecticut dismissed the charges for which he was arrested in September 2019.  The Court construes these allegations as raising Fourth Amendment false arrest and imprisonment and malicious prosecution claims.

As a preliminary matter, the Court notes that although the plaintiff refers to the arrest by Officer Emerson as having occurred on January 28, 2019, copies of Bethel Police Department investigation and arrest reports as well as documents from the criminal case filed in the Connecticut Superior Court reflect that the arrest occurred on January 25, 2019 and that Officer Emerson effectuated the arrest of the plaintiff without a warrant.  *See Sentementes v. Bethel Police Dep't, et al.*, Case No. 3:20cv580(MPS) (Compl., ECF No. 1, at 39-41, 83, 93-94, 96, 102-03).  It is apparent from these documents that the plaintiff appeared in state court for the first time on January 28, 2019.  *Id.* at 94, 103.

### 1.     Fourteenth Amendment

The plaintiff contends that his arrest in January 2019 and confinement pursuant to the arrest constituted a deprivation of life and liberty.  Compl. at 4.  An allegation that a criminal prosecution was initiated without probable cause arises under the Fourth Amendment rather than the Fourteenth Amendment's substantive due process clause.  *See Albright v. Oliver*, 510 U.S. 266, 268, 274 (1994) (no "substantive [due process] right under ... the Fourteenth Amendment to be free from criminal prosecution except upon probable cause," because "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it").

To the extent that the plaintiff asserts a substantive due process claim under the

Fourteenth Amendment in connection with his arrest and prosecution, the Supreme Court has observed that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing ... claims." *Albright*, 510 U.S. at 273.  Because the Fourth Amendment provides protections against unlawful arrests and prosecutions without probable cause, the Court dismisses the deprivation of life and liberty claim to the extent that is asserted as a substantive due process claim under the Fourteenth Amendment.  *See, e.g.*, *Simons v. New York,* 472 F. Supp. 2d 253, 265 (N.D.N.Y. 2007) (dismissing substantive due process claim where the Fourth Amendment provided an explicit textual source of protection against pretrial deprivations of liberty, including false arrest, and was thus the proper guide for analyzing plaintiffs' constitutional claims) *aff'd sub nom. Simons v. Fitzgerald*, 287 F. App'x 924 (2d Cir. 2008).

## 2.     Fourth Amendment

The Second Circuit has held that claims for false arrest or malicious prosecution asserted under § 1983 "to vindicate the Fourth … Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citations omitted).  Thus, in analyzing section 1983 claims for false arrest, malicious prosecution, and false imprisonment, the federal court must "look to the law of the state in which the arrest and imprisonment occurred." *Marchand v. Hartman*, 395 F. Supp. 3d 202, 216 (D. Conn. 2019) (citation omitted).  Under Connecticut law, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Pizarro v. Kasperzyk*, 596 F. Supp. 2d 314, 318 (D.

Conn. 2009) (quoting *Green v. Donroe*, 186 Conn. 265, 267, 440 A.2d 973, 974 (1982)).  A

plaintiff bringing a false arrest or false imprisonment claim under Connecticut law must have had

the underlying charges terminated in his or her favor. *Miles v. City of Hartford*, 445 F. App'x

379, 383 (2d Cir. 2011) (noting favorable termination is an element of a section 1983 claim

"sounding in false imprisonment or false arrest" under Connecticut law).

  To establish a claim for malicious prosecution under Connecticut law, a plaintiff must

prove four elements: "'(1) the defendant initiated or procured the institution of criminal

proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the

plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with

malice, primarily for a purpose other than that of bringing an offender to justice.'"  *Spak v.

Phillips*, 857 F.3d 458, 461 n.1 (2d Cir. 2017) (quoting *Brooks v. Sweeney*, 299 Conn. 196, 210–

11, 9 A.3d 347, 357 (2010)).

  The favorable termination requirement "demands a 'show[ing] that the underlying

criminal proceeding ended in a manner that *affirmatively indicates [the arrestee's]

innocence*.'" *Allen v. Harkins*, No. 3:20CV964 (JAM), 2020 WL 4369125, at *2 (D. Conn. July

30, 2020) (quoting *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018) (emphasis

added). Such an affirmative indication may be satisfied by a *nolle* "if a plaintiff can demonstrate

that the criminal charges against [him] were discharged without a trial under circumstances

amounting to the abandonment of the prosecution without request by him or arrangement with

him[.]" *Conquistador v. Zweibelson*, No. 3:17CV132 (KAD), 2019 WL 4758350, at *3 (D.

Conn. Sept. 30, 2019) (citation and quotation omitted).

Generally, probable cause to arrest exists when the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 851 (2d Cir. 1996); *see also Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007); *see also Bhatia v. Debek*, 287 Conn. 397, 410, 948 A.2d 1009, 1020 (2008) (explaining in malicious prosecution context that under Connecticut law, "[p]robable cause has been defined as the knowledge of facts sufficient to justify a reasonable [person] in the belief that he has reasonable grounds for prosecuting an action."). An arresting officer only needs "probable cause [to make a lawful arrest], he need not also believe with certainty that the arrestee will be successfully prosecuted." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001).

### a.      Official Capacity Claim

The plaintiff states that he is suing the Police Chief Finch and Officer Emerson in their individual as well as official capacities. "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). To prevail on a claim against a municipality under § 1983 based on the actions of a public official, the plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). The same standard applies to claims against police officers and other municipal employees sued in their official capacities. *See Hafer v. Melo,* 502 U.S. 21, 25 (1991) (The

11

claims brought against municipal employees in their official capacities are considered claims against the municipality.)

The plaintiff has asserted no facts regarding the conduct of Chief Finch.  Nor has he alleged any facts suggesting that the conduct of Officer Emerson in arresting him was attributable to any policy, custom, or practice established or implemented by the Town of Bethel or Chief Finch.  *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) ("a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy") (citation omitted).

Accordingly, the plaintiff has failed to include facts to state a claim against Officer Emerson or Chief Finch in their official capacities under *Monell*. The official capacity claims asserted against Officer Emerson and Chief Finch are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### b.    Officer Emerson – Individual Capacity Claim

The plaintiff alleges that Officer Emerson did not have probable cause to believe that he had committed the crimes of threatening and violation of a protective order because Sid Weston was a witness to the conversation between him and his son.  Moreover, approximately a year after the plaintiff's arrest on January 25, 2019, the State of Connecticut dismissed/*nolled* the charges arising from that arrest.  The plaintiff contends that the State of Connecticut *nolled* the criminal charges because it did not have sufficient evidence to secure a conviction on those

charges at trial.  Compl. at 5 ¶¶ 19, 22.  The facts alleged do not suggest that the dismissal of the charges was conditioned on the plaintiff's cooperation or in exchange for some consideration offered by him to the State of Connecticut.  Thus, the criminal matter terminated in the plaintiff's favor.  The Court concludes that the plaintiff has asserted enough facts to permit the Fourth Amendment claims of false arrest and malicious prosecution to proceed against Officer Emerson.

### c.      Chief Finch – Individual Capacity Claim

The plaintiff does not include any facts regarding the conduct of Chief Finch.  Rather, it is apparent that the plaintiff has named Finch because of his supervisory role in the police department.

A plaintiff seeking to recover money damages under section 1983 from a defendant in his or her individual capacity must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). A government or prison official is not personally involved in a constitutional violation simply because he or she was the supervisor of other defendants who may have violated the plaintiff's constitutional rights. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) ("[L]iability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant").

The Second Circuit has recently held that "after *Iqbal,* there is no special rule for supervisory liability," and instead, "[t]he violation must be established against the supervisory official directly." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Therefore, to demonstrate personal involvement under section 1983, "a plaintiff must plead and prove 'that

each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Once a plaintiff properly alleges that a defendant was personally involved in a constitutional deprivation, he or she "must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Raspardo*, 770 F.3d at 116.

The plaintiff does not allege that Chief Finch was present at the station or involved in his arrest on criminal charges of threatening and violation of a protective order on January 25, 2019 or was in any way involved in the subsequent criminal prosecution.  Thus, the plaintiff has not alleged the direct involvement of Chief Finch in the violations of the plaintiff's Fourth Amendment rights.  The claims asserted against Chief Finch are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### D.      Cruel and Unusual Punishment and Harassment

The plaintiff alleges that the State of Connecticut knew it did not have a case against him but chose to prosecute him anyway and neglected to dismiss the charges for a year after his arrest.  The plaintiff contends that the year that he spent in detention constituted cruel and unusual punishment.  These allegations are essentially another way of stating a false arrest or malicious prosecution claim.  Furthermore, the Eighth Amendment's Cruel and Unusual Punishment Clause is not applicable to the plaintiff as an arrestee and pretrial detainee.  *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015) (distinguishing between pretrial detainee's claims, which are brought under the Fourteenth Amendment, and post-conviction detainee's claims, which are brought under the Eighth Amendment).  Accordingly, the Eighth Amendment cruel and unusual punishment claim is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

14

The plaintiff alleges that the state's decision to submit a warrant to the court and the Bethel Police Department's decision to file an arrest warrant constituted attempts to harass him. Compl. at 9 ¶¶ 41-42.  The plaintiff's arrest, however, was not made pursuant to a warrant.  The plaintiff also asserts that Bastone's repeated complaints made to the Bethel Police Department were intended to harass and injure him and that Public Defender Leaf intended to make him angry by swearing at him and making sarcastic and inappropriate comments suggesting that he would be found guilty of the criminal charges pending against him.  *Id.* ¶¶ 43-44.

The allegation against Bastone is conclusory.  Furthermore, the fact that Bastone may have filed complaints with the police regarding the conduct of the plaintiff does not state a claim of a violation of the plaintiff's federally or constitutionally protected rights.  As indicated above, there are no facts to suggest that Bastone was involved in the decision to arrest the plaintiff or to prosecute him on criminal charges.  Furthermore, verbal harassment does not state a claim under section 1983.  *See, e.g.*, *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (upholding district court's determination that name-calling without appreciable injury not constitutional injury); *Cane v. New Britain Police Dep't*, No. 3:16-CV-1638 (SRU), 2017 WL 752278, at *3 (D. Conn. Feb. 27, 2017) ("Verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under section 1983.") (quoting *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)).  Accordingly, the allegations of harassment by Public Defender Leaf and Pasqualina Bastone do not state a plausible claim of a violation of the plaintiff's constitutional rights and are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### E.      Equal Protection

In his description of his section 1983 cause of action, the plaintiff alleges that his

detention for close to a year before the State of Connecticut *nolled* the criminal charges cause of

action deprived him of equal protection of the law or equal rights or equal justice.  Compl. at 4.

He does not elaborate on these statements.  Thus, it is unclear whether the plaintiff intended to

assert a claim under the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall

"deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

XIV.  It does not mandate identical treatment for each individual or group of individuals. Instead,

it requires that similarly situated persons be treated the same. *See City of Cleburne v. Cleburne*

*Living Ctr.*, 473 U.S. 432, 439-40 (1985).

To state a plausible equal protection claim, a plaintiff must allege facts showing that: (1)

he was treated differently from similarly situated individuals and (2) that the difference in or

discriminatory treatment was based on " 'impermissible considerations such as race, religion,

intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to

injure a person.' " *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting

*LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). The plaintiff has not alleged that the

defendants treated him differently or discriminated against him because of his membership in a

protected class or based on some suspect classification.

Absent allegations to support "class-based" discrimination, an individual may state

an equal protection claim by alleging that he or she has been intentionally and "irrationally

singled out as a ... class of one." *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008). In the

Second Circuit, a plausible class of one claim requires a class-of-one plaintiff to "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).

.       The plaintiff fails to offer any facts about any comparator who was plausibly so similarly situated to him as to raise an inference that no rational basis exists for the differential treatment. Because the plaintiff does not allege that he was treated differently than any other similarly-situated person on the basis of a suspect classification or that he was singled out for arbitrarily discriminatory treatment, his conclusory allegation that the defendants violated his right to equal protection of the laws is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## F.       State Law Claim – Intentional Infliction of Emotional Distress

The plaintiff alleges that the conduct of the defendants constituted the intentional infliction of emotional distress.  To state a claim for intentional infliction of emotional distress, a plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington,* 254 Conn. 205, 210, 757 A.2d 1059, 1062 (2000) (internal quotation marks and citation omitted).  To be held liable for intentional infliction of emotional distress, one's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 210–11 (internal quotation marks and citation omitted).

The plaintiff describes the defendants' conduct as "intentionally" egregious and "designed only for the sole purpose of causing harm and injury to the plaintiff as to shock the average, their conscience and this court."  Compl. at 11 ¶ 48.  The Court does not find that the defendants' alleged conduct was "extreme and outrageous," as those terms are interpreted at common law. The standard in Connecticut to demonstrate extreme and outrageous conduct is "stringent." *Huff v. W. Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998). "[E]xtreme and outrageous" conduct is defined as that which "exceed[s] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."  *DeLaurentis v. New Haven*, 220 Conn. 225, 267, 597 A.2d 807, 828 (1991). Accordingly, the Court concludes that the plaintiff has not stated a plausible claim of intentional infliction of emotional distress against any defendant.  The claims of intentional infliction of emotional distress asserted against the defendants are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### G.      State Law Claim – Breach of Fiduciary Duty

The plaintiff asserts a claim against Bank of America CEO Moynihan for breach of fiduciary duty for failing to release funds to him or the person whom he authorized as his power of attorney and asserts a claim against his brother, Daniel, for breach of fiduciary duty in connection with the administration of their mother's estate.  Compl. at 6 ¶¶ 26-27.  The plaintiff alleges that Pasqualina Bastone, who was his partner in the ownership of two liquor stores and a restaurant, had a fiduciary duty not to commit insurance fraud and that Public Defender Leaf failed to fulfill certain duties owed to him during the prosecution of his criminal case.

Title 28, section 1367(a), of the United States Code provides that "in any civil action of

which the district courts have original jurisdiction, the district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution." Claims are part of the same case or controversy "when they derive from a

common nucleus of operative fact." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328,

335 (2d Cir. 2006) (citation omitted).  Therefore, if "the facts underlying the federal and state

claims substantially overlap or ... presentation of the federal claim necessarily [brings] the facts

underlying the state claim before the court," the exercise of supplemental jurisdiction is

warranted.  *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)

(internal citation omitted).

Although the plaintiff alleges that the actions of his brother and CEO Moyihan prevented

him from posting bond, the two claims asserted against these defendants are distinct from the

allegedly false accusations and statements leading to his arrest on January 25, 2019 and

subsequent prosecution.  These allegations as well as the allegations regarding the fiduciary duty

owed to the plaintiff by Public Defender Leaf and Bastone involve claims and facts that are

unrelated to the facts leading to the plaintiff's arrest.  Thus, exercise of supplemental jurisdiction

over the state law claims of breach of fiduciary duty asserted against these defendants is

inappropriate.  *See, e.g.*, *Lussier*, 211 F.3d at 704 (if federal and state claims "rest[ ] on

essentially unrelated facts," the exercise of supplemental jurisdiction is not justified.);

*Sentementes v. Lamont*, No. 3:21-CV-453 (MPS), 2021 WL 1550594, at *4–5 (D. Conn. Apr. 20,

2021) (concluding it would not be appropriate to exercise supplemental jurisdiction over state

law claim of breach of fiduciary duty against two defendants because the state law claims were

19

distinct and involved different defendants than the underlying federal false arrest claim that was proceeding).

To the extent that the plaintiff asserts claims for breach of fiduciary duty against the State of Connecticut and the Bethel Police Department, there are no facts to suggest that any sort of relationship of special trust and confidence that would establish a fiduciary duty existed between the plaintiff and the State of Connecticut in prosecuting his criminal case or the Bethel Police defendants in arresting him.  *See Allen, et al. v. Verizon Wireless, et al.,* No. 3:12–cv–482, 2013 WL 2467923 (D. Conn. June 6, 2013) ("To state a claim for breach of fiduciary duty, the plaintiff must first allege that a fiduciary duty exists.")  (citing *Biller Assocs. v. Peterken,* 269 Conn. 716, 721-23, 849 A.2d 847, 851 (2004)) ("A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise *and is under a duty* to represent the interests of the other.") (citation omitted).  The breach of fiduciary duty claims asserted against the State of Connecticut and the Bethel Police defendants are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

## ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

**(1)**     All federal claims asserted against the State of Connecticut, Governor Ned Lamont, Pasqualina Bastone, Bank of America CEO Brian Moyihan, Daniel Sentementes, and Bethel Police Chief Finch, the Fourth Amendment false arrest and malicious prosecution claims asserted against Bethel Police Officer Emerson in his official capacity, the state law claims of intentional infliction of emotional distress asserted against all defendants, and the state law claim of breach of fiduciary duty asserted against the State of Connecticut and the Bethel Police

defendants are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).  The Court declines to exercise supplemental jurisdiction over the state law claim of breach of fiduciary duty asserted against Bank of America CEO Moynihan, Daniel Sentemetes, Public Defender Leaf and Pasqualina Bastone and **DISMISSES** that state law claim without prejudice.

The Court will permit the Fourth Amendment false arrest and malicious prosecution claims to proceed against Bethel Police Officer Emerson in his individual capacity.

**(2)**     The Clerk shall mail a copy of the complaint, this order, and a waiver of service of process request packet to Officer Emerson in his individual capacity at the Bethel Police Department, 12 Judd Avenue, Bethel, Connecticut 06801.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of the request.  If Officer Emerson fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and Officer Emerson shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)**     Defendant Emerson shall file his response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms and complaint are mailed to him.  If the defendant chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above. He may also include any and all additional defenses permitted by the Federal Rules.

**(4)**     Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the Court.

**(5)**     All motions for summary judgment shall be filed within seven months (210 days)

21

from the date of this order.

     **(6)**     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.  The plaintiff is advised that the Program may be used only to file documents with the Court.  Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court.  Therefore, discovery requests must be served on defendants' counsel by regular mail.

     **(7)**     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  Putting a new address on a letter without indicating that it is a new address is insufficient. If the plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address.  The plaintiff should also notify the attorney for the defendants of his new address.

     SO ORDERED at Hartford, Connecticut this 10th day of May, 2021.

                   _____/s/_____
                   Michael P. Shea
                   United States District Judge