UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS SENTEMENTES, | : | |
|     *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:20cv1826 (MPS) |
| | : | |
| GOVERNOR NED LAMONT, et al., | : | |
|     *Defendants*. | : | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, Thomas Sentementes, has commenced a civil rights action under 42 U.S.C. § 1983, pertaining to an arrest that occurred on January 25, 2019. Compl., ECF No. 1 at 3, ¶ 3. In an initial review order, the Court dismissed most claims brought in the complaint and terminated most of the named defendants as parties to this action. Initial Review Order, ECF No. 15 at 20-21. The Court permitted the Plaintiff to proceed only with Fourth Amendment false arrest and malicious prosecution claims against defendant Gregory Emerson ("Officer Emerson"). The Court subsequently permitted the Plaintiff to amend the complaint to bring an additional state law negligence claim against Officer Emerson. Ruling on Mot. to Am., ECF No. 52 at 4. Thus, at this stage in the proceedings, the Plaintiff proceeds against a single defendant, Officer Emerson, on Fourth Amendment claims of false arrest and malicious prosecution and a state law claim of negligence. *See* Order, ECF No. 59.

Officer Emerson has filed a motion for summary judgment on all claims brought against him. Def.'s Mot. for Summ. J., ECF No. 60. He contends that he is entitled to summary judgment on the Plaintiff's Fourth Amendment claims because he had probable cause, or, at least, arguable probable cause, to arrest the Plaintiff. *Id.* at 1. The Court finds merit in this argument and, thus,

GRANTS summary judgment on the Plaintiff's Fourth Amendment claims. The Court also DISMISSES the Plaintiff's state law negligence claim without prejudice as it declines to exercise supplemental jurisdiction over the claim.

I.     FACTS[1]

In January of 2019, Officer Emerson was employed as a police officer by the Town of Bethel Police Department ("BPD"). ECF No. 60-2 at 1, ¶ 1. On January 23, 2019, Officer Emerson was one of several officers who responded to a reported disturbance at a business called Bethel Wine & Spirits. *Id.* at 2, ¶ 4. This establishment was owned, at least partially, by the Plaintiff's girlfriend, Pasqualina Bastone. ECF No. 60-8 at 2. Exhibits submitted in support of summary judgment provide conflicting indications as to whether the Plaintiff was an unofficial co-owner of the business. ECF No. 60-6 at 7-8; 60-13 at 2-3.

When officers arrived at Bethel Wine & Spirits, the Plaintiff was found in an agitated and intoxicated state. ECF No. 60-2 at 1, ¶ 3. Officers called Ms. Bastone in hopes that she could drive the Plaintiff home. ECF No. 60-13 at 3. But, upon her arrival, the Plaintiff began yelling at her. *Id.* The Plaintiff then threatened to kill Ms. Bastone and harm police officers on the scene. ECF No.

---

[1] The facts noted within this order are drawn from the Defendant's Local Rule 56(a)1 Statement of Undisputed Material Facts and its supporting exhibits. ECF No. 60-2. The Plaintiff has filed a Statement of Facts in Opposition to Summary Judgment, as contemplated by D. Conn. L. Civ. R. 56(a)2. ECF No. 64. However, the denials of fact noted in this filing are not accompanied by specific citations to admissible evidence as required by D. Conn L. Civ. R. 56(a)3. With his summary judgment motion, the Defendant filed a Notice to Self-Represented Litigant, as required by D. Conn. L. Civ. R. 56(b).  ECF No. 61. This Notice informed the Plaintiff of the requirement to support denials of the movant's version of facts with specific citations to evidence. The Notice also warned the Plaintiff that a failure to submit or cite evidence in support of his denials of fact could result in the Court's granting the Defendant's motion for summary judgment if it showed that the Defendant was entitled to judgment as a matter of law. Because the Plaintiff has not complied with Local Rules, all material facts set forth in the Defendant's 56(a)1 Statement are deemed admitted to the extent that the factual assertions are supported by cited evidence. *See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement"); *see also* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1.")

60-2 at ¶ 3; ECF No. 60-8 at 2; ECF No. 60-13 at 3.

Eventually, police officers succeeded in admitting the Plaintiff to a hospital. ECF No. 60-2 at 2, ¶ 5. There, the Plaintiff was given a sedative and proceeded to sleep for the next 24 hours. *Id.*

On January 25, 2019, the Plaintiff was discharged from the hospital and picked up by his friend, Sid Weston. *Id.*, ¶ 8. Later that day, the Plaintiff's son, Andrew Sentementes, called the BPD. *Id.*, ¶ 10. Andrew, who then resided in Florida, reported having called Mr. Weston's cellphone several times to speak with his father. ECF No. 60-2 at 2, ¶ 10, ECF No. 60-5 at 2. During one of these calls, Andrew claimed that his father threatened to kill him after first killing Ms. Bastone. ECF No. 60-2 at ¶ 11; ECF No. 60-5 at 2-3. Andrew then informed the BPD that he had already called Ms. Bastone to warn her of his father's alleged threat. ECF No. 60-2 at 3, ¶ 12; ECF No. 60-5 at 3.

After receiving Andrew's call, the BPD received a call from Ms. Bastone. ECF No. 60-2 at 3, ¶ 15. Ms. Bastone confirmed that Andrew had warned her of the Plaintiff's alleged threat and stated that she was in fear for her safety due to the statements relayed by Andrew. *Id.* On the morning of January 25, 2019, prior to his conversations with his son, the Danbury Superior Court had granted Ms. Bastone a restraining order that prohibited the Plaintiff from threatening her. ECF No. 60-2 at 3, ¶¶ 13-14; ECF No. 60-8 at 2.

Throughout the remainder of the day, Officer Emerson attempted, without success, to locate the Plaintiff. ECF No. 60-2 at 3-4, ¶¶ 16-17. But that night, Officer Emerson was able to contact the Plaintiff by calling Mr. Weston's cell phone. *Id.* at 4, ¶ 18. And the Plaintiff agreed to come to the police department to discuss the complaints made by his son earlier that day. *Id.*

The Plaintiff arrived at the police department with Mr. Weston and consented to an

interrogation with Officer Emerson. ECF No. 60-2 at 4, ¶¶ 19, 21; ECF No. 60-5 at 4. Under interrogation, the Plaintiff denied threatening Andrew or Ms. Bastone, and insisted that it was, in fact, Andrew who had threatened him. ECF No. 60-2 at 4, ¶ 21; ECF No. 60-5 at 4. According to the Plaintiff, Mr. Weston was present during the Plaintiff's phone calls with Andrew and could corroborate that the Plaintiff had not made any threatening statements. ECF No. 60-2 at 4, ¶ 21; ECF No. 60-5 at 4. In addition, the Plaintiff claimed that Andrew had sent text messages to Mr. Weston's cellphone that would prove the Plaintiff's innocence. ECF No. 60-2 at 4, ¶ 21; ECF No. 60-5 at 4. Following his interrogation, the Plaintiff prepared and signed a sworn written statement reiterating what he had told Officer Emerson. ECF No. 60-2 at 4, ¶ 21; ECF No. 60-7 at 2.

After questioning the Plaintiff, Officer Emerson spoke to Mr. Weston, who stated that he did not hear the Plaintiff make any threats while on the phone with Andrew. ECF No. 60-2, ¶ 23; ECF No. 60-5 at 4. Mr. Weston also showed Officer Emerson text messages that he had received from Andrew earlier that day. ECF No. 60-2, ¶ 23; ECF No. 60-5 at 4. However, Officer Emerson did not perceive these text messages to be criminal or threatening in nature. ECF No. 60-2, ¶ 23; ECF No. 60-5 at 4.

Summary judgment exhibits do not convey what was specifically written in the text messages that Andrew sent to Mr. Weston. In his sworn statement, the Plaintiff admitted to having only actually read one of the text messages in question. ECF No. 60-7 at 2. And, based on the Plaintiff's deposition testimony, it appears that Mr. Weston has not retained records of the text messages. ECF No. 60-6 at 22.[2]

---

[2] With his summary judgment filings, the Plaintiff has included an affidavit purportedly from Mr. Weston that confusingly describes the now-unavailable text messages as having stated that "[Andrew] was going to violate [the Plaintiff]" if [Mr. Weston] picked him up from Danbury Hospital from an incident 1/23/19, which his son Andrew Sentementes did do, which as Andrew states it, never happened." ECF No. 62 at 63.

4

In addition to his own affidavit, among other supporting exhibits submitted by Officer Emerson are (1) his sworn incident report dated January 26, 2019[3], ECF No. 60-5 at 2, which is co-signed (also under oath) by Sergeant Christos, who reportedly spoke with Ms. Bastone and was among the officers who tried to locate the Plaintiff on the afternoon of January 25, 2019; (2) Sergeant Christos's own sworn "arraignment report" regarding the events of January 25, 2019, which repeats, in more condensed form, the narrative in Officer Emerson's incident report, including the statement that Andrew reported the Plaintiff's threats against him and Bastone to the police on January 25, 2019, ECF No. 60-8 at 2; and (3) a sworn statement by Bastone dated January 26, 2019, that on January 25, 2019 Andrew had reported to her that the Plaintiff had threatened to kill her and Andrew.

Officer Emerson also submits evidence substantiating the events of January 23, 2019, only two days before the January 25 arrest, in which, among other things, the Plaintiff threatened to kill Bastone. ECF No. 60-8.

After considering all available evidence, Officer Emerson believed that he had probable cause to arrest the Plaintiff for the commission of second-degree threatening (a misdemeanor) and violation of a protection order (a felony). ECF No. 60-4 at 3, ¶ 13; ECF No. 60-5 at 4. Under Connecticut law, a person is guilty of second-degree threatening when "such person threatens to commit any crime of violence with the intent to terrorize another person, or … in reckless disregard of the risk of causing such terror." C.G.S. § 53a-62(a)(2). And "[a] person is guilty of criminal violation of a protection order when an order issued pursuant to [statute] has been issued against such person, and such person violates such order." C.G.S. § 53a-223(a).

---

[3] The date next to the signature is "1/26/18," but the year appears to be a typo as the report otherwise repeatedly refers to January 25, 2019, and all agree that was the date of the arrest that is the subject of this lawsuit.

Without a warrant, Officer Emerson arrested the Plaintiff on charges of second-degree threatening and criminal violation of a protection order. ECF No. 60-2 at 5, ¶ 24. These charges were pursued by prosecutors, but, eventually, nolled on March 4, 2020. ECF No. 60-2 at 5, ¶ 27; ECF No. 60-15 at 1, 5-6. A prosecutor explained the decision to nolle charges by noting that the Plaintiff had been convicted of a crime in another case that carried a potential ten-year prison sentence and "for which the State would be seeking the maximum penalty," and that the State intended to argue facts pertaining to the nolled charges at sentencing for that conviction. ECF No. 60-15 at 7-8.

## II. LEGAL STANDARD

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P. The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord,* 554 F. 3d. 255, 266 (2d Cir. 2009). He or she cannot "rely on conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). In deciding a motion for summary judgment, the court must draw all reasonable inferences from the evidence in favor of the non-moving party. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).

## III. DISCUSSION

Officer Emerson contends that he is entitled to summary judgment on the Plaintiff's Fourth Amendment claims because he had probable cause, or, at the very least, arguable probable cause, to arrest the Plaintiff. ECF No. 60-1 at 1. The Court agrees, and, thus, grants Officer Emerson's motion for summary judgment.

### A. Probable Cause

The Court has permitted the Plaintiff to proceed with Fourth Amendment false arrest and malicious prosecution claims against Officer Emerson. ECF No. 15 at 21. While the elements of these constitutional torts differ, each requires a showing that Officer Emerson arrested the Plaintiff without probable cause. *See Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 112 (D. Conn. 2019) ("The existence of probable cause is a complete defense to claims of false arrest and malicious prosecution under both federal and Connecticut law.") Thus, the Plaintiff's § 1983 claims necessarily fail if Officer Emerson had probable cause to arrest plaintiff for the commission of *any* criminal offense. *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[W]hen faced with a claim for false arrest, we focus on the validity of the *arrest,* and not on the validity of each charge.").

Probable cause "exists when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (internal quotation marks omitted). "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it, as probable cause does not require absolute certainty." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotations, alteration, and citations

omitted). In this analysis, an officer's subjective belief as to whether probable cause existed is irrelevant. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.")

Here, the Plaintiff was charged with second-degree threatening and violation of a protection order. He appears to have been charged with violating a protection order on the theory that he threatened Bastone in violation of an order of protection. Thus, the Court focuses its analysis on the question of whether Officer Emerson had probable cause to believe that the Plaintiff threatened to kill Andrew and/or Ms. Bastone. *See* C.G.S. § 53a-62(a)(2) (criminalizing threats "to commit any crime of violence with the intent to terrorize another person, or … reckless disregard of the risk of causing such terror.")

Officer Emerson had two good reasons to think that the Plaintiff threatened to kill Andrew and Ms. Bastone on January 25, 2019. First, and most importantly, Andrew reported to the BPD that the Plaintiff made those threats to him, and Bastone corroborated this. Further, the Plaintiff has submitted no evidence to suggest that Officer Emerson or other BPD officers had any reason to doubt Andrew's or Bastone's credibility. *See Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity.") (internal citation omitted). Second, Officer Emerson witnessed the Plaintiff threaten to kill Ms. Bastone just two days prior to the alleged threats resulting in his arrest. This propensity evidence corroborated Andrew's report of criminal conduct. *See Brisco v. Ercole*, 565 F.3d 80, 95 (2d Cir. 2009) (evidence of prior convictions inadmissible at trial would be relevant consideration in determining probable cause.)

To be sure, Officer Emerson was also aware of some evidence that weighed against a finding of probable cause. Specifically, the Plaintiff denied that he had made threatening

8

comments to Andrew, and Weston told Officer Emerson he did not hear the Plaintiff make any such comments. But "a suspect's denials" are generally "insufficient to obviate probable cause." *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 31-32 (E.D.N.Y. 2015) (internal quotation marks and citation omitted). And Officer Emerson was not required to accept Weston's version of events instead of Andrew's and Bastone's; further, Weston stated that he did not hear the Plaintiff make any threats during the phone conversation, but there were apparently several phone conversations between the Plaintiff and Andrew on January 25, 2019, see ECF No. 60-5 at 2, and it is not clear that Weston was privy to all of them.

The Plaintiff contends that text messages sent by Andrew to Mr. Weston's cellphone also undermined a finding of probable cause because they showed that Andrew was threatening the Plaintiff. Even if the texts did include threats by Andrew to the Plaintiff, that would not negate probable cause to arrest the Plaintiff for his threats against Andrew and Bastone. But in any event, Officer Emerson concluded after reading the texts that they included no threats by Andrew. Because the text messages in question appear to have been deleted, and there is no evidence in the summary judgment record indicating that their contents were, in fact, exculpatory, they do not contribute to a finding that Officer Emerson lacked probable cause to arrest the Plaintiff. To the contrary, evidence showing Officer Emerson's willingness to consider all available evidence undermines a finding of constitutional impropriety. *See Panetta,* 460 F.3d at 395 (When assessing probable cause, an "officer may not disregard plainly exculpatory evidence.")

In his papers opposing summary judgment, the Plaintiff makes much of the fact that, at his January 2020 criminal trial for the events related to his *January 23, 2019* arrest, Officer Emerson testified that he could not recall arresting the Plaintiff for violation of a protective order, the January 25, 2019 arrest that is the subject of this lawsuit. ECF No. 62 at 37. Specifically, Officer

9

Emerson testified that he did not "off the top of [his] head" remember "calling [the Plaintiff] to the BPD and interviewing [him] . . . for a violation of protective order and arresting [him] on the spot for the violation of protective order," ECF No. 62 at 3. The Plaintiff argues that Officer Emerson's affidavit submitted in support of summary judgment, ECF No. 60-4, in which he recounts the receipt of complaints of threats by the BPD on January 25, 2019 and states that he believes there was probable cause to arrest the Plaintiff on that day amounts to perjury, ECF No. 62 at 1-2, and warrants, among other things, denial of Officer Emerson's motion for summary judgment.

This argument suffers from several flaws. First, testimony that a witness does not recall an event does not necessarily contradict later testimony (or a later affidavit) by the witness about that event; the witness might have had his memory refreshed, a likely scenario here, as Officer Emerson's January 26, 2019 incident report – not available to him at the January 2020 trial and not pertinent to that trial according to the trial judge, see ECF No. 62 at 46, 47-48, 51-52, 57-58, was available to him when he prepared the affidavit in the summary judgment record in this case. ECF No. 60-4 at 3. Second, even if I considered Emerson's trial testimony to impeach his summary judgment affidavit, the record would still include ample independent evidence supporting probable cause, including Officer Emerson's January 26, 2019 incident report - his testimony a year later that he could not remember the arrest does not significantly impeach that -, the sworn arraignment report by Sergeant Christos, and the sworn statement by Bastone; indeed, the latter two documents are enough to support probable cause without considering any of Officer

Emerson's statements at all.[4]

In sum, Officer Emerson had probable cause to believe that the Plaintiff had committed a crime prior to his arrest. Thus, the Court grants Officer Emerson's motion for summary judgment.

### B. Arguable Probable Cause

As a backup argument, Officer Emerson contends that he had arguable probable cause to arrest the Plaintiff, and is, thus, entitled to qualified immunity. ECF No. 60-1 at 11. Qualified immunity shields state officials from liability unless a plaintiff can show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Applying this standard, qualified immunity provides "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Having just determined that Officer Emerson had probable cause to arrest the Plaintiff, it necessarily follows that Officer Emerson is protected by qualified immunity. Assuming though that the Court's assessment of probable cause is mistaken, Officer Emerson is still protected by qualified immunity on the ground that he did not violate clearly established law.

A police officer is entitled to qualified immunity to § 1983 false arrest and malicious prosecution claims if "arguable probable cause" existed to support an arrest. *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001). "'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). To

---

[4] As noted in an order filed today denying Plaintiff's motion to impose sanctions on Officer Emerson and his lawyer, the Plaintiff's assertion that Officer Emerson committed perjury is highly implausible because no one disputes that Officer Emerson did, in fact, arrest the Plaintiff for violation of a protective order, that fact and Officer Emerson's testimony that he could not remember it were of no consequence in the trial regarding the Plaintiff's January *23*, 2019 arrest, and Officer Emerson said nothing at that trial that contradicted the details of January 25, 2019 recounted in his January 26, 2019 incident report or in his summary judgment affidavit.

determine whether "arguable probable cause" existed, a court must determine whether "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Cerrone*, 246 F.3d at 202-03 (internal quotation marks and citation omitted).

Here, Officer Emerson had information indicating that the Plaintiff had made criminal threats - Andrew's report of the threats, Bastone's corroboration of Andrew's report, and his own observation of the Plaintiff's recent, similar threats. Although Officer Emerson was also aware of some exculpatory evidence - claims from the Plaintiff and Mr. Weston that the Plaintiff *had not* made threatening comments to Andrew - prevailing law in the Second Circuit did not "clearly establish" that a police officer must refrain from making an arrest based on victims' reports when a suspect and his friend offer a different version of events. *See Panetta*, 460 F.3d at 396 (noting that police officer "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest" and "the arresting officer does not have to prove plaintiff's version wrong before arresting him.") A reasonable police officer in Officer Emerson's shoes could have construed existing caselaw as permitting the Plaintiff's arrest. Because Officer Emerson had, at a minimum, arguable probable cause to arrest the Plaintiff, he is protected by qualified immunity. This provides additional support for the Court's summary judgment ruling.

      **C.**    **State Law Negligence Claim**

Officer Emerson contends that he is entitled to summary judgment on the Plaintiff's state law negligence claim for several reasons. ECF No. 60-1 at 13-19. The Court, however, does not reach these arguments. Having granted summary judgment on all the Plaintiff's federal claims, the Court declines to exercise jurisdiction over his sole remaining state law claim. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law

claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.") Accordingly, the Court dismisses the Plaintiff's negligence claim without prejudice to his right to pursue it in state court.

## IV.   CONCLUSION

For these reasons, Officer Emerson's Motion for Summary Judgment, ECF No. 60, is **GRANTED** as to the Plaintiff's § 1983 claims.  The Plaintiff's state law negligence claim is dismissed <u>without prejudice</u> to his right to pursue it in state court. The Clerk is directed to enter judgment for Officer Emerson and close this case.

IT IS SO ORDERED.

>                    /s/
> Michael P. Shea, U.S.D.J.

Dated: February 8, 2023
       Hartford, Connecticut

13